# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| **TAMEKA BEAVERS**, <br><br> Plaintiff, <br><br> v. <br><br> **LOWES COMPANIES, INC.** <br><br><br> **Defendant.** | **COMPLAINT** <br> **Jury Trial Demanded** |

The Plaintiff, TAMEKA BEAVERS, being duly sworn, deposes and complains of the following:

## NATURE OF ACTION

This civil action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq. (hereinafter "Title VII") and Section 1981 of the Civil Rights Act of 1866 (hereinafter "Section 1981"). This action has been initiated in order to seek appropriate relief on behalf of the Plaintiff, TAMEKA BEAVERS (hereinafter, "Plaintiff" or "Beavers"). Plaintiff alleges that while employed by the Defendant, she has been subject to adverse employment actions (wrongful termination) because of her race and in retaliation for activities protected by Title VII and Section 1981. Plaintiff seeks equitable and monetary relief in the form of present and future lost wages, compensatory damages for emotional distress, and punitive and/or liquidated damages as provided by law.

## PARTIES & JURISDICTION

1. Plaintiff is a Black female and is a citizen and resident of the City of Charlotte, Mecklenburg County, North Carolina.

2. Defendant Lowes Companies, Inc. (hereinafter "Defendant" or "Lowes") is an American retail company specializing in Home Improvement with is principal office located in the city of Mooresville, Iredell County, North Carolina and is authorized to conduct and is conducting business within the state of North Carolina.

3. At all times alleged herein, the Defendant was and continues to be engaged in an industry affecting commerce and is an "employer" and/or a "covered employer" within the meaning of Title VII, inasmuch as it regularly employs over 500 employees.

4. All procedural prerequisites to the filing of this civil action have been fulfilled. Plaintiff obtained a Right to Sue letter from the Equal Employment Opportunity Commission (hereinafter "EEOC") on December 19, 2024. A true and accurate copy of that letter is attached as **Exhibit A.**

5. This Court has jurisdiction over the parties and subject matter of this Complaint.

## STATEMENT OF FACTS

6. Plaintiff realleges and incorporates by reference herein paragraphs 1 - 5 of this Complaint.

7. Plaintiff became an employee of Lowes on approximately November 7, 2024, being hired as a Senior Strategic Sourcing Manager. In March 2024, the name of her role changed to Senior Category Manager.

8. Plaintiff's job summary according to Lowe's job description was as follows: "The primary purpose of this role is to lead the planning, development and execution of category plan strategies for a portfolio of Lowe's indirect spend. This position works with internal business partners to align sourcing initiatives and activities to the business goals and objectives. The position will direct the sourcing team resources and engage key cross

functional stakeholders on execution of category plans including sourcing execution, contract negotiation, market intelligence and analytics, and supplier management."

9. Since the time of her hiring up until her termination, Plaintiff's direct manager was Carolyn Carney (hereinafter "Carney"), "Senior Director" for Enterprise Strategic Sourcing "ESS". Carney is a Caucasian female.

10. Upon information and belief, Plaintiff's role was a newly formed role at Lowe's at the time she took on the position.

11. Being her direct supervisor, Carney was responsible for training Plaintiff in this newly formed role, and was supposed to provide guidance, direction, and clear expectations of her job duties to aid in developing Plaintiff's newly formed role within her department.

12. Plaintiff, in all respects herein, was performing her job in a manner that was consistent with Defendant's legitimate business expectations during her employment with Lowes.

13. In fact, Beavers made significant contributions to her department. For Example, in February 2024, Ms. Beavers was invited by senior leadership to support a strategic transformation initiative within her department, a role that reflected trust in her skills, leadership, and contribution, as well as her comprehensive category development background where she was able to share her past category planning strategies and structure to support this transformation.

14. However, shortly after being invited to participate in this strategic transformation initiative, Carney began to treat Beavers differently than her Caucasian colleagues within her department.

15. For example, Beavers faced a discrepancy in work standards and expectations as compared to her white counterparts in her department. For instance, Carney gave

additional resources and guidance to her white colleagues that she did not give to Plaintiff. Carney also allowed her white colleagues, specifically Robert Hawkins, project handoffs to be done completely differently than her project handoffs, which essentially required Plaintiff to perform more work and have a more complicated process for her handoffs than her white colleagues.

16. Beavers asked Carney to provide her the same work standards, expectations, and resources that she gave her white colleagues but Carney refused to do so. Plaintiff believes and alleges she refused to do so because of Plaintiff's race. Instead, Carney held Plaintiff to higher standards than that of her white colleagues while ensuring Beavers had less resources to perform her job than her white colleagues, leaving Plaintiff at a disadvantage.

17. Additionally, Carney frequently withheld essential information she needed to perform her job, excluded Beavers from key departmental meetings and publicly criticized her work, yet she did not treat any of Beaver's white colleagues in such a manner. Plaintiff believes and alleges Carney treated Beavers this way because of her race.

18. Carney also required Plaintiff to do on her own Statement of Works ("SOW's") even though these were not originally supposed to be a part of her job duties and typically were done by a paralegal.

19. Upon information and belief, Carney never required her white colleague, Robert Hawkins, to do SOW's even though Beavers and Hawkins had the same job title/role.

20. Even though Carney was responsible for helping to support Plaintiff in efforts to help develop Plaintiff's newly formed role at Lowes, she used her position as an opportunity

to discriminate against Plaintiff on the basis of her race and essentially tear her down instead of build her up in that role with intentions on ultimately getting her fired.

21. In approximately June 2024, Plaintiff sought help to Carney's discriminatory behaviour by reporting what she believed to be an "anonymous" report to the Associates Relations Manager. On approximately July 31, 2024, Ms. Beavers reiterated her concerns during the investigation conducted by the Associate Relations team expressing to them that she was experiencing unfair treatment and wanted to be treated equally as her white colleagues.

22. However, after the "anonymous" report to the Associates Relation's team, Carney's discriminatory behavior got worse, leading Plaintiff to believe that Carney was aware that Plaintiff was the one who reported her. It is therefore believed and alleged that the Associate Relations Team did reveal to Carney that Plaintiff reported Carney to them and Carney's behavior got worse because she retaliated against Plaintiff for reporting her.

23. On or about August 26, 2024, Plaintiff reported Carney's discriminatory behaviour to her then Vice President, Doug Jennings, through his "open-door policy". During this meeting, Plaintiff shared with Mr. Jennings that she was not being treated the same by Carney as compared to her white colleagues, specifically, Robert Hawkins. Mr. Jennings encouraged Plaintiff to report her concerns to Human Resources through their "open door policy".

24. On or about August 28, 2024 Plaintiff did in fact report Carney's discriminatory behaviour to Human Resources Business Partner, Savannah Melda through their "open door policy". Plaintiff shared with Ms. Melda that Carney was treating her differently than her white colleagues, being singled-out, and that she was now facing back-

lash/retaliation from Carney to what she believed as an anonymous report she made about Carney to the Associates Relations Team in June. Plaintiff also shared that she no longer felt safe reporting to Carney.

25. On approximately August 28, 2024 Plaintiff received her first and only "write-up" by way of an Electronic Corrective Action Report ("ECAR") shortly after reporting Carney to Human Resources. After receiving the ECAR, Plaintiff requested she be transferred out of Carney's department, but was denied that request by human resources because she was under an ECAR.

26. Upon information and belief, the primary reason for the ECAR and the basis of the performance issues was due to Plaintiff's SOW errors, which again, were not supposed to be apart of her job duties and she was the only person in her role that were required to do them.

27. Because it was her first "write-up", human resources assured Plaintiff that the ECAR would "fall off" after a certain period of time (approximately six months).

28. However, the ECAR never had the chance to "fall off" because Defendant terminated Plaintiff's employment allegedly based on "performance issues" on or about September 24, 2024.

29. Upon information and belief, Defendant did not follow its own internal disciplinary policies when they terminated Plaintiff. Specifically, termination after one incident of an ECAR was not consistent with their disciplinary policy nor did they give Plaintiff an opportunity to correct any performance issues outlined in the ECAR.

30. Upon information and belief, the Defendant did not follow its own internal disciplinary policy when they terminated Plaintiff because she was terminated under the pretext of

performance issues, while she was really terminated on the basis of her race and retaliation for reporting Carney's discriminatory behavior towards her.

## FIRST CLAIM FOR RELIEF
### (Violation of Title VII – Race Discrimination & Retaliation)

31. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 30 of this Complaint.

32. Plaintiff is a member of a protected class on the basis of race. She is a Black woman.

33. Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

34. Defendant has denied Plaintiff promotional opportunities for which she was qualified and has otherwise discriminated against her by denying her compensation, other benefits of employment, and fired her because of her race and in retaliation for her complaints of race discrimination in violation of Title VII.

35. Plaintiff engaged in protected activities when she made complaints regarding the discriminatory behavior of Carney towards her to the Associate's Relations Team, her VP, and Human resources.

36. Defendant retaliated against Plaintiff for her complaints of racial discrimination.

37. The acts and/or omission of the Defendant when viewed by a reasonable employee, were materially adverse in that Defendant's actions would dissuade any reasonable worker from seeking promotional opportunities within Defendant's organization and/or from making or supporting a complaint of employment discrimination, including complaints of race discrimination.

38. As a direct and proximate result of Defendant's acts, Plaintiff has suffered, and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Plaintiff has sustained, as a direct and proximate result of Defendant's actions, damages in the form of emotional distress, including, but not limited to humiliation, embarrassment, loss of professional standing, sleeplessness, anxiety, and depression, including physical manifestations of emotional distress. Accordingly, Plaintiff is entitled to have and recover of Defendant compensatory damages in an amount to be proved at trial in excess of Fifteen Thousand Dollars ($15,000.00).

39. The Defendant's acts and/or omissions have been and continue to be willful and intentional and have been committed with malice and/or a reckless indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to have and recover of the corporate Defendant punitive damages in an amount to be proved at trial in excess of Fifteen Thousand Dollars ($15,000.00).

## SECOND CLAIM FOR RELIEF
### (Section 1981—Discrimination and Retaliation on the Basis of Race)

40. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 34 of this Complaint.

41. Plaintiff is a member of a protected class on the basis of race. She is a Black female.

42. Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

43. Defendant discriminated against the Plaintiff as described above, including but not limited to harassing her, subjecting her to a hostile work environment, denying her promotions and firing her.

44. Plaintiff engaged in protected activities when she made complaints regarding the discriminatory behavior of Carney to the Associate's Relations Team, her VP, and Human resources.

45. Defendant also retaliated against Plaintiff for her complaints of racial discrimination.

46. Defendant's actions were taken with a willful and wanton disregard of Plaintiff's rights under Section 1981.

47. As a direct and proximate result of said unlawful employment practices and in disregard of the Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

48. As a direct and proximate result of Defendant's acts, Plaintiff has suffered, and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Plaintiff has sustained, as a direct and proximate result of Defendant's actions, damages in the form of emotional distress, including, but not limited to humiliation, embarrassment, loss of professional standing, sleeplessness, anxiety and depression, including physical manifestations of emotional distress. Accordingly, Plaintiff is entitled to have recover of Defendant compensatory damages in an amount to be proved at trial in excess of Fifteen Thousand Dollars ($15,000.00).

49. The Defendant's acts and omissions have been and continue to be willful and intentional and have been committed with malice and/or a reckless indifference to Plaintiff's federally protected rights. Accordingly, Plaintiff is entitled to have and recover of the corporate Defendant punitive damages in an amount to be proved at trial in excess of Fifteen Thousand Dollars ($15,000.00).

**WHEREFORE**, Plaintiff respectfully requests the Court to:

1. Enter judgment in favor of Plaintiff and against the Defendant for violation of Beaver's rights under Title VII and Section 1981; and

2. Grant a permanent injunction enjoining the Defendant from engaging in unlawful employment practices, including race, color, religion, sex, and national origin, and disability discrimination and retaliation against persons who oppose practices which violate Title VII and Section 1981.

3. Order the Defendant to make the Plaintiff whole by providing her with equitable and compensatory damages in an amount in excess of Sixty Thousand Dollars ($60,000.00) for the loss of past, present, and future lost wages and other benefits, as well as for emotional, mental, distress, anxiety, and humiliation caused by the acts of the Defendant.

4. Order the Defendant to pay to the Plaintiff punitive damages as provided by federal law in amounts to be proved at trial exceeding Sixty Thousand Dollars ($60,000.00).

5. Award Plaintiff her reasonable costs and attorney's fees incurred in this action as provided by federal law; and

6. Grant such further and different relief to the Plaintiff as the Court deems necessary and proper under the circumstances.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a jury trial regarding the matters alleged herein.

Submitted on the 18th day of March, 2025.

<div style="margin-left: 40%;">

*<u>s/Erin E. Rozzelle, Esq.</u>*
Erin Rozzelle, Esq.
Attorney for Plaintiff
NC BAR# 37211
**THE FREEDMEN LAW GROUP**
2923 S. Tryon Street, Suite 220
Charlotte, N.C. 28203
(704) 271-2048
erozzelle@freedmenlawgroup.com

</div>

## VERIFICATION

I, Tameka Beavers, being duly sworn and states I am the Plaintiff in the foregoing action. I have read the forgoing Complaint and the allegations contained therein are true based upon my own memory, knowledge, and belief. The attorney for Plaintiff have relied upon the information I have supplied regarding the foregoing allegations in this Complaint.

_____
Tameka Beavers

Sworn to and subscribed before
me this __18__ day of __March__, 2025.

__Gabrielle Ramos__
Notary Public Name

__Gabrielle Ramos__
Notary Public Signature

My commission expires: __02/16/2028__

GABRIELLE RAMOS
NOTARY PUBLIC
MECKLENBURG COUNTY, NC
COMMISSION EXP. FEB. 16, 2028

# CERTIFICATE OF SERVICE

This is to certify that the undersigned served a copy of the foregoing **COMPLAINT** by CM/ECF and to the address listed below:

        **Lowe's Companies, Inc.**
        Corporation Service Company (Registered Agent)
        2626 Glenwood Avenue, Suite 550
        Raleigh, N.C., 27608

This the 18th day of March, 2025.

        *s/Erin E. Rozzelle, Esq.*
        Erin Rozzelle, Esq.
        Attorney for Plaintiff
        NC BAR# 37211
        **THE FREEDMEN LAW GROUP**
        2923 S. Tryon Street, Suite 220
        Charlotte, N.C. 28203
        (704) 271-2048
        erozzelle@freedmenlawgroup.com